354

175 A.3d 942

NEW JERSEY DIVISION OF CHILD PROTECTION AND PERMA-
NENCY, PLAINTIFF–RESPONDENT, v. A.B., DEFENDANT–
APPELLANT. IN THE MATTER OF A.F., MINOR.

A–27 September Term 2016
077664

Argued September 26, 2017—Decided December 21, 2017

356

CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ–VINA, and SOLOMON join in JUSTICE TIMPONE's opinion.

Clara S. Licata, Designated Counsel, argued the cause for appellant (Joseph E. Krakora, Public Defender Parental Representation, attorney; T. Gary Mitchell, Deputy Public Defender, of counsel, and Clara S. Licata, of counsel and on the briefs).

Sara M. Gregory, Deputy Attorney General, argued the cause for respondent New Jersey Division of Child Protection and Permanency (Christopher S. Porrino, Attorney General, attorney; Andrea S. Silkowitz, Assistant Attorney General, of counsel, and Joyce Calefati Booth, Deputy Attorney General, on the brief).

Melissa R. Vance, Assistant Deputy Public Defender, argued the cause for respondent A.F. (Joseph E. Krakora, Public Defender Law Guardian, attorney; Melissa R. Vance, on the brief).

Mary M. McManus–Smith argued the cause for amicus curiae Legal Services of New Jersey (Melville D. Miller, Jr., President, attorney; Mary M. McManus–Smith, Melville D. Miller, Jr., and Jeyanthi C. Rajaraman, on the brief).

JUSTICE TIMPONE delivered the opinion of the Court.

This case comes before us as a matter of right from a divided Appellate Division panel. The panel majority upheld the trial court's determinations that defendant A.B. abused or neglected A.F., her sixteen-year-old daughter; that A.B. willfully abandoned A.F.; and that remarks attributed to A.B.'s sister, J.F., were subject to suppression as embedded hearsay. The dissenting panelist disagreed with all three determinations.

We now affirm the panel majority's judgment that the New Jersey Division of Child Protection and Permanency met its burden of proof concerning A.B.'s abuse or neglect of A.F. We

find, however, insufficient proof of willful abandonment and therefore reverse on that issue. We also find that the hearsay evidence was properly suppressed.

I.

We marshal the following facts from the record.

Sixteen-year-old A.F. and her infant son lived with her biological mother, defendant A.B., in an apartment owned by A.B.'s sister, J.F. A.F. and A.B. had a tumultuous relationship, which spurred the incidents that resulted in this case.

On October 2, 2012, the New Jersey Division of Child Protection and Permanency (the Division) received a referral that A.F. had run away with her infant son in September 2012. The referral included concerns that A.F. smoked marijuana, consumed alcohol, and exhibited inadequate parenting. The Division dispatched a caseworker to interview A.B. at her apartment, where she told the caseworker she had been having difficulty with A.F., who was very disrespectful. A.B. disclosed that A.F. had run away with her infant son several days earlier when A.B. took away A.F.'s laptop and cellphone as punishment for being suspended from school for cursing at a teacher. A.B. tried to reach A.F. by cellphone but, when she refused to answer, A.B. cancelled A.F.'s cellphone service.

In October 2012, in response to a call from A.F.'s high school, the caseworker went to the high school and met with A.F. During this meeting, A.F. related that she had been staying with various friends since leaving home. A.F. indicated that she had previously returned home to reconcile with A.B. and that they had gone together to the school to have A.F. reinstated. During the conference with the school's Management Crisis Team, A.F. and A.B. got into an argument, and A.B. "made statements that she was close to kicking [A.F.] out of her home." Near the end of the conference, A.F. expressed that she had "no intention of returning to her mom's home," and in fact did not.

Later that day, the caseworker discovered that A.F. and her infant son were staying with a friend, L.V., whose residence lacked electricity. The caseworker attempted to gain entry to the residence to assess its suitability for a young runaway and her infant. She was refused entry. The caseworker immediately conveyed to A.B. her apprehensions regarding the safety of A.F. and her infant son, as well as the suitability of A.F.'s living arrangement. A.B. voiced concern but was "still not willing to allow the children to come back and reside with her," emphasizing "she was not willing to take [A.F.] back" given that A.F. "was very disrespectful."

A.B. asserted that she lived with her sister, J.F., who owned the apartment and was unwilling to allow A.F. back into the home "as well." A.B. could think of no one else with whom A.F. could stay. She was also unwilling to consent to an order of emergency removal for A.F. The Division resorted to an emergency removal process and placed A.F. and her son in a resource home. The Division then filed a verified complaint in the Family Part of the Superior Court, Chancery Division, seeking continued legal custody of A.F. At an order to show cause hearing, the court determined that the Division's removal was proper and that the Division would retain custody of A.F. The court later continued the Division's custody of A.F.

On February 19, 2013, the court conducted a fact-finding hearing to determine whether A.B. abused, neglected, or willfully abandoned A.F. within the meaning of Title 9, N.J.S.A. 9:6–8.21 to -8.73. As a preliminary matter, defense counsel objected to the admission of embedded hearsay in the form of statements attributed to J.F., A.B.'s sister, within the Division's referral, reports, and documents. The court sustained that objection.

At the fact-finding hearing, the Division's caseworker was its only witness. During the Law Guardian's cross-examination of the caseworker, the Law Guardian asked if J.F. ever told her that "she was not willing to let A.F. stay in her house." Defense counsel objected on the basis of inadmissible hearsay; the judge

sustained the objection. During the defense's summation, the Division objected when defense counsel attempted to reference J.F.'s refusal to allow A.F. into her home. The judge similarly sustained the objection on hearsay grounds. During defense counsel's cross-examination of the caseworker, the Division objected when defense counsel intimated that J.F. refused to allow A.F. back into the apartment, arguing that it was not a proper question for that witness to answer. The judge sustained the objection.

In an oral decision rendered on the record, the judge determined that A.B. neglected A.F. in violation of subsections (4)(a) and (5) of N.J.S.A. 9:6–8.21(c), explaining that "refusing to allow a 16 year old child into her home who has an infant herself would be gross negligence. It's just reckless disregard for the safety of her child."

A divided Appellate Division panel affirmed in an unpublished opinion. The panel majority rejected A.B.'s contention that a finding of abuse or neglect under N.J.S.A. 9:6–8.21(c)(4) could not be sustained because A.F. was not actually harmed in any way, reasoning that "the statute makes expressly clear that actual impairment of the child is not required to support a finding of neglect." The panel majority similarly dismissed A.B.'s argument that the judge failed to make an explicit finding that A.F. was in imminent danger as defined by N.J.S.A. 9:6–8.21(c)(4). "[T]he risks inherent in barring a sixteen-year-old child from the family home without arranging any alternative source of shelter or support are obvious," the majority observed.

The panel majority affirmed the judge's finding of willful abandonment under N.J.S.A. 9:6–8.21(c)(5), holding that the record contained substantial and credible evidence that A.B. willfully abdicated any responsibility for her daughter. The panel majority found support for that finding in evidence that A.B. refused to permit A.F. to return home despite being informed by the Division that A.F.'s living arrangement was ill-advised, as well as A.B.'s failure to make other arrangements for A.F.'s care and support.

Lastly, the panel majority rebuffed the dissent's argument that A.B.'s due process rights were violated by the suppression of hearsay testimony concerning J.F.'s alleged refusal to allow A.F. back into the apartment. The panel majority noted that the judge had discretion to determine the credibility of the evidence adduced at the fact-finding hearing and found no error in the judge's conclusion that the hearsay testimony regarding A.B.'s sister was unreliable.

The dissenting panel member disagreed with the majority's refusal to consider evidence of the sister's ownership of the apartment and her decision not to re-admit A.F., contending that the caseworker's testimony on the matter was competent, material, and relevant evidence.

The dissent further took issue with the panel majority's finding of abuse or neglect, reasoning that even if A.B. had precluded A.F. from returning home, that act does not justify an abuse or neglect finding because there was neither evidence of actual harm to A.F. nor the threat of harm. The dissent noted that A.F. ran away on other occasions and each time returned home unscathed.

The dissent further disputed the panel majority's finding of abandonment under the statute. The dissenting panelist maintained that abandonment required a finding that a parent must exhibit a willful forsaking of her parental responsibilities, whereas A.B. gave no indication that she intended to permanently bar her daughter or was abdicating her parental rights and duties.

A.B. appealed to this Court as of right. See R. 2:2–1(a)(2). We granted leave to Legal Services of New Jersey (LSNJ) to appear as amicus curiae.

## II.

### A.

A.B. advances three arguments on appeal and urges this Court to reverse the decision of the panel majority. First, she asserts

that it was error to exclude hearsay testimony alleging that her sister J.F. was instrumental in prohibiting A.F. from returning to her apartment. A.B. argues that the panel majority's reliance on Division of Youth & Family Services v. J.Y., 352 N.J. Super. 245, 800 A.2d 132 (App. Div. 2002), to support exclusion of the hearsay statements was misplaced. Rather, A.B. argues that the J.Y. decision established a shield to protect against the State's misuse of hearsay and casual non-evidential assertions as evidence in a Title 9 case and that the Family Part judge flouted J.Y.'s demand for "fairness and formality in a Title 9 trial." A.B. also adopts the dissenting judge's assertion that the exclusion of the hearsay statements constituted a due process violation.

Second, A.B. argues that the Division did not present sufficient evidence to sustain a finding of abuse or neglect against her under N.J.S.A. 9:6–8.21(c)(4). Specifically, A.B. contends that the Division was required to show:

(1) that A.F.'s physical, mental, or emotional condition was impaired or in imminent danger of becoming impaired; (2) that A.B. failed to exercise a minimum degree of care in providing her daughter with adequate shelter[;] and (3) that she was financially able to do so or had been offered the financial means to do so.

A.B. maintains that the Division did not meet its burden of proving any of those elements. As to the harm or impairment prong, A.B. argues that the panel majority created a categorical rule in holding that "the risks inherent in barring a sixteen-year-old from the family home without arranging any alternative source of shelter are obvious." A.B. asserts that this Court condemned such rules in the Title 9 context in Division of Child Protection & Permanency v. E.D.-O., 223 N.J. 166, 192–93, 121 A.3d 832 (2015). A.B. maintains that even if V.L.'s home lacked electricity, that alone would not indicate that A.F. was in danger of impairment. A.B. argues that the Division did not make the requisite showing of imminent peril to A.F. A.B. further asserts that the Division failed to provide evidence of her financial ability to provide shelter.

Lastly, A.B. argues that the trial court's finding of abandonment under Title 9 must be reversed because there were no proofs presented to demonstrate that she intended to willfully forego her

parental responsibilities. A.B. stresses that the record indicates she had no intent of abandoning A.F. as evidenced by the fact that she allowed A.F. to return to the family home on several occasions.

### B.

The Division counters that it demonstrated abuse or neglect of A.F. by A.B. by a preponderance of the evidence and asks this Court to affirm the panel majority. The Division echoes the trial court's finding that A.B.'s refusal to allow A.F. back into the apartment amounted to gross negligence and evidenced her reckless disregard for A.F.'s safety. The Division also adopts the panel majority's holding that "the risks of leaving a teenager without a source of shelter are 'obvious.'" The Division notes that A.B. refused services offered to her, including substance abuse treatment, and failed to seek assistance even after A.F. had left the home. In addition, the Division alleges that A.B. thwarted its attempts to provide her with assistance when she failed to apprise the Division of her issues with A.F.

The Division underscores that the trial court acted within its discretion in excluding the hearsay statements at issue because those statements were not credible and A.B. sought and was granted their exclusion. A.B. cannot now argue that precluding the statements was error, the Division argues, under the doctrine of invited error. The Division notes that A.B.'s argument was not raised below.

The Division urges this Court to affirm the panel majority's finding of abandonment under N.J.S.A. 9:6–8.21(c)(5). The Division contends that A.B.'s refusal to allow A.F. back into the home amounted to a "willful or intentional act" under the statute.

### C.

The Law Guardian, appearing on behalf of A.F., argues that the court properly excluded as hearsay statements regarding J.F.'s

refusal to allow A.F. to return to the apartment, stressing that those statements did not qualify for an enumerated exception because they were unreliable and lacked corroboration. The Law Guardian agrees that the Division properly showed, by a preponderance of the evidence, A.B.'s abuse or neglect of A.F. under subsections (4) and (5) of N.J.S.A. 9:6–8.21. The Law Guardian submits that the risks that arise from "leaving a child without adequate shelter need not be explained" and are plainly evident. The Law Guardian also supports the finding of abandonment under N.J.S.A. 9:6–8.21(c)(5), arguing that A.B. had an obligation to "provide or arrange housing for her child" and her not doing so amounted to a failure to "provide for her child's safety and well-being."

## D.

As amicus curiae, LSNJ urges this Court to reverse the panel majority's holding and argues that the Division should not have initiated abuse or neglect proceedings. Rather, LSNJ contends, the Division should have performed its "duty to provide the resources necessary to ensure adequate housing" instead of placing the onus on A.B. for not "seek[ing] help from the Division to shelter her daughter." LSNJ advocates that for the Division to meet its burden of proof under N.J.S.A. 9:6–8.21(c)(4)(a), it must prove either that the parent had the financial means to provide for his or her child or that the Division affirmatively offered the financial or other resources necessary to secure adequate housing. LSNJ additionally contends that the Division could have provided shelter for A.F. under the New Jersey Homeless Youth Act, codified in relevant part at N.J.S.A. 9:12A–1.

LSNJ advances that A.B.'s refusal to allow A.F. to return home was simply an acknowledgment of her lack of options. According to LSNJ, A.B. exhibited her intent to continue to parent A.F.; LSNJ therefore takes issue with the panel majority's finding of willful abandonment.

III.

A.

The New Jersey Constitution dictates that the Superior Court include a family part. N.J. Const. art. VI, § 3, ¶ 3. Accordingly, our Constitution assigned to the Family Division the formidable task of adjudicating some of the most sensitive and precarious issues within contemporary society. See, e.g., Div. of Youth & Family Servs. v. I.S., 214 N.J. 8, 14, 66 A.3d 1271 (2013) ("Family courts are expected to address many difficult situations . . . .").

The United States Supreme Court has long recognized the fundamental right of individuals to "establish a home and bring up children" as "essential to the orderly pursuit of happiness." Meyer v. Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). The Supreme Court later stated that "the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court." Troxel v. Granville, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). The sacrosanct obligations involved in child-rearing extend beyond even longstanding legal doctrine. The bearing and raising of children is one of the most intimate endeavors society pursues. It is for this very reason that we have "invest[ed] the family court with broad discretion because of its specialized knowledge and experience in matters involving parental relationships and the best interests of children." Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 427, 48 A.3d 1075 (2012); see also Cesare v. Cesare, 154 N.J. 394, 413, 713 A.2d 390 (1998) ("Because of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding."); Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 343, 990 A.2d 1097 (2010). Indeed, we defer to family part judges "unless they are so wide of the mark that our intervention is required to avert an injustice." F.M., 211 N.J. at 427, 48 A.3d 1075.

### B.

 We first consider whether the judge properly excluded the embedded hearsay statements at issue. "Trial judges are given wide discretion in exercising control over their courtrooms" and have "the ultimate responsibility of conducting adjudicative proceedings in a manner that complies with required formality in the taking of evidence and the rendering of findings." Div. of Youth & Family Servs. v. J.Y., 352 N.J. Super. 245, 264, 800 A.2d 132 (App. Div. 2002). Appellate courts review evidentiary determinations by a trial court, including hearsay determinations, for abuse of discretion. See Carmona v. Resorts Int'l Hotel, Inc., 189 N.J. 354, 379, 915 A.2d 518 (2007).

Before the fact-finding hearing, defense counsel objected to the admission of embedded hearsay contained in the referral document and the Division's reports, and, specifically, to any hearsay statements from J.F.'s boyfriend and J.F. The judge concurred and sustained the objection. During the fact-finding hearing, defense counsel raised a hearsay objection when the Law Guardian referenced J.F.'s refusal to allow A.F. back into her apartment. Later, the Division objected on the same grounds when defense counsel referenced the refusal in his summation. The Division similarly objected when defense counsel implied in cross-examining the caseworker that J.F. refused to allow A.F. back into the apartment, arguing that it was not a question for the witness to answer—an apparent shorthand for a hearsay objection. As with defense counsel's preliminary objection, the court sustained all three objections and excluded the challenged testimony as inadmissible hearsay. The panel majority affirmed.

The dissenting judge, citing to Smith v. Delaware & Atlantic Telegraph & Telephone Co., 63 N.J. Eq. 93, 95, 51 A. 464 (Ch. 1902), aff'd, 64 N.J. Eq. 770, 53 A. 818 (E. & A. 1902), concluded that this Court's jurisprudence requires that "hearsay evidence not objected to should be considered evidential." The dissent wrote that "A.B.'s statement that her sister objected to A.F.'s return to the home entered the record without objection and

should have been given its natural and logical probative effect" particularly because "if the decision to bar A.F. was made by J.F., A.B. cannot be held responsible for not allowing her daughter to return to the home." Those arguments were largely adopted by A.B. on appeal to this Court.

The reasoning underpinning those arguments is problematic. The hearsay statements at issue were the subject of objection and were excluded early in the proceedings. Importantly, it was defense counsel who objected at the commencement of the fact-finding hearing to "any hearsay statements from ... [J.F.]."

This Court has long recognized the doctrine of invited error, which "operates to bar a disappointed litigant from arguing on appeal that an adverse decision below was the product of error, when that party urged the lower court to adopt the proposition now alleged to be error." Brett v. Great Am. Recreation, 144 N.J. 479, 503, 677 A.2d 705 (1996); accord State v. Jenkins, 178 N.J. 347, 358, 840 A.2d 242 (2004). A.B. succeeded in having the trial court take a certain course of action; she cannot now condemn the very determination for which she advocated merely because the consequences of that determination have proved unfavorable. The doctrine of invited error is predicated "on considerations of fairness and preservation of the integrity of the litigation process." Brett, 144 N.J. at 503, 677 A.2d 705. Here, A.B. attempts to accomplish precisely what our jurisprudence prohibits.

Hearsay, which may not be admitted into evidence unless it falls into a recognized exception, N.J.R.E. 802, is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.J.R.E. 801(c). When a hearsay statement contains, in turn, another hearsay statement, the embedded hearsay must independently fall within one of the exceptions set forth in N.J.R.E. 803 or 804 to be admissible. Div. of Child Prot. & Permanency v. N.T., 445 N.J. Super. 478, 497, 139 A.3d 108 (App. Div. 2016); see also N.J.R.E. 805.

Here, J.F.'s purported refusal to allow A.F. to return to the apartment was referenced in documents about which the case-worker was asked. Although the documents themselves benefitted from an exception to the hearsay rule, it was not an abuse of the trial court's discretion to find that the remarks within those reports attributed to J.F.—who did not testify—were hearsay within hearsay that did not fall within an independent exception. Thus, even absent invited error, the judge did not abuse her discretion in excluding the hearsay statements, and we affirm the panel majority's determination on that point.

## C.

We next turn to the findings of abuse or neglect and of abandonment, both in violation of Title 9. The focus of Title 9 "is not the 'culpability of parental conduct' but rather 'the protection of children.'" E.D.-O., 223 N.J. at 178, 121 A.3d 832 (quoting G.S. v. Dep't of Human Servs., 157 N.J. 161, 177, 723 A.2d 612 (1999)). Title 9 delineates the standards for adjudicating cases of abuse or neglect. The act provides interim relief for children at risk and defines "the standards for abuse and neglect proceedings against parents and guardians." Div. of Youth & Family Servs. v. A.L., 213 N.J. 1, 18, 59 A.3d 576 (2013). The "paramount concern" of Title 9 is to ensure the "safety of the children," so that "the lives of innocent children are immediately safeguarded from further injury and possible death." N.J.S.A. 9:6–8.8.

Title 9 defines an abused or neglected child as

a child less than eighteen years of age ... whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent or guardian ... to exercise a minimum degree of care ... in supplying the child with adequate food, clothing, shelter, education, medical or surgical care though financially able to do so or though offered financial or other reasonable means to do so.

[N.J.S.A. 9:6–8.21(c)(4)(a).]

Included under Title 9 is a separate category of abuse or neglect: "willful abandonment." A child less than 18 years of age may be

found to be abused or neglected if the child has been willfully abandoned by his parent or guardian. N.J.S.A. 9:6–8.21(c)(5).

The panel majority affirmed the judge's findings that A.B. abused or neglected A.F. under subsections (4)(a) and (5) of N.J.S.A. 9:6–8.21. We analyze each finding in turn. In doing so, we review the judge's legal conclusions de novo. Manalapan Realty, L.P. v. Twp. Comm. of Twp. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995). As we have stressed, however, "appellate courts should accord deference to family court factfinding" in recognition "of the family courts' special jurisdiction and expertise in family matters." Cesare, 154 N.J. at 413, 713 A.2d 390; see also M.C. III, 201 N.J. at 343, 990 A.2d 1097.

1.

■ We turn first to the finding that A.F. was abused or neglected under N.J.S.A. 9:6–8.21(c)(4)(a). To prove abuse or neglect under that subsection, the Division must establish by a preponderance of the evidence that: (1) the child's physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired; and (2) the impairment or imminent impairment results from the parent's failure to exercise a minimum degree of care.

■ In G.S., we elaborated on the standard required to meet the "minimum degree of care" element. We adopted the intermediary position between simple negligence and the intentional infliction of harm. G.S., 157 N.J. at 179, 723 A.2d 612. Simply put, we have held that "a guardian fails to exercise a minimum degree of care when he or she is aware of the dangers inherent in a situation and fails adequately to supervise the child or recklessly creates a risk of serious injury to that child." Id. at 181, 723 A.2d 612. To determine if a parent or guardian failed to exercise a minimum degree of care, we must additionally "account for the surrounding circumstances," E.D.-O., 223 N.J. at 180, 121 A.3d 832 (citing G.S., 157 N.J. at 181–82, 723 A.2d 612), given that "[a]buse and neglect

cases 'are fact-sensitive,'" ibid. (citing Div. of Youth & Family Servs. v. T.B., 207 N.J. 294, 309, 24 A.3d 290 (2011)).

 In A.L., we considered whether a newborn whose stool tested positive for cocaine metabolites was abused or neglected by his mother under Title 9 if she used drugs during pregnancy. 213 N.J. at 8–9, 59 A.3d 576. We explained that circumstances in which actual impairment is lacking will still meet the impairment element if there is "evidence of imminent danger or substantial risk of harm." Id. at 22, 59 A.3d 576. Intuitively, a court need not sit idly by until a child is actually impaired by parental inattention or neglect. Id. at 23, 59 A.3d 576. The plain language of the statute reveals that if the Division can prove by a preponderance of the evidence that a child faces imminent danger of impairment, the statutory element will be satisfied. See ibid.

Guided by this framework, we find sufficient support for the determination that A.B. neglected A.F. under N.J.S.A. 9:6–8.21(c)(4). A.F. was sixteen years old and caring for a premature infant. When A.F.'s school became aware that she had run away, the school referred the issue to the Division. The Division then asked A.B. to contact them pertaining to A.F.; A.B. never did so. Only later did A.B. concede that she was unaware of A.F.'s whereabouts. The caseworker then unearthed that A.F. was living in a residence lacking electricity, so she visited the home to determine its adequacy. When the caseworker concluded that the home was unsuitable, she implored A.B. to sign an emergency removal or to allow the children to return home; A.B. refused both entreaties.

Viewing those facts collectively, we agree with the panel majority regarding N.J.S.A. 9:6–8.21(c)(4) and hold that A.B.'s conduct here was grossly negligent because she was clearly aware of the dangers inherent in the situation. The perils facing a sixteen-year-old caring for a four-month-old infant, who is left to fend for herself, bereft of any parental supervision, guidance, or care, are self-evident. A.B. not only failed to adequately supervise A.F. but exacerbated the existing dangers to her daughter by terminating

A.F.'s cellphone service and refusing to allow the children back into the apartment after the Division caseworker explicitly delineated the hazards they faced. The panel majority correctly concluded that "the risks inherent in barring a sixteen-year-old child from the family home without arranging any alternative source of shelter or support are obvious." Clearly, A.B. failed to exercise the minimum degree of care. That failure placed A.F.'s physical, mental, and emotional condition in imminent danger of becoming impaired.

We affirm the panel majority's finding of A.B.'s abuse or neglect of A.F. per N.J.S.A. 9:6–8.21(c)(4).

### 2.

■■■ Finally, we address the Division's allegation that A.F. was abandoned under N.J.S.A. 9:6–8.21(c)(5).

> Abandonment of a child shall consist in any of the following acts by anyone having the custody or control of the child: (a) willfully forsaking a child; (b) failing to care for and keep the custody and control of a child so that the child shall be exposed to physical or moral risk without proper and sufficient protection; (c) failing to care for and keep the control and custody of a child so that the child shall be liable to be supported and maintained at the expense of the public, or by child caring societies or private persons not legally chargeable with its or their care, custody and control. [N.J.S.A. 9:6–1.]

The Division argues that A.B.'s actions, including her refusal to allow A.F. and her infant son to return home, amounted to a "willful or intentional act" that qualified as abandonment under the statute. The judge found that the State had met its burden of proof and that A.B. had abandoned A.F. The panel majority affirmed.

In Lavigne v. Family & Children's Society, Chief Justice Vanderbilt, writing for the Court, set forth the standard required for the State to prove abandonment under N.J.S.A. 9:6–8.21(c)(5):

> [t]he statutory notion of abandonment does not necessarily, we think, imply that the parent has deserted the child, or even ceased to feel any concern for its interests. It fairly may, and in our judgment does, import any conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child.

[11 N.J. 473, 480, 95 A.2d 6 (1953) (emphasis added) (quoting Winans v. Luppie, 47 N.J. Eq. 302, 304, 20 A. 969 (E. & A. 1890)).]

Conduct by a parent that evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child is an extremely high bar. The facts here do not support that A.B.'s conduct amounted to a "settled purpose" to forego her parental rights. The dissent suggested several factors from the record indicating that A.B. had no intention of abdicating her parental rights and duties: A.B. periodically permitted A.F. back into the dwelling; A.B. accompanied A.F. to school to help her get reinstated after suspension; and A.B., upon receiving her own housing, permitted A.F. to return to live with her.

While A.B. undoubtedly took questionable actions and had bouts of ambivalence concerning her daughter that we hold to be neglectful under N.J.S.A. 9:6–8.21(c)(4), the facts here give no indication that she willfully relinquished her parental rights. Stated plainly, to find abandonment under N.J.S.A. 9:6–8.21(c)(5), the trial court must make specific findings concerning the conduct of the parent or guardian evidencing a true forsaking of the child. No such conduct is present here.

For those reasons, we reverse the finding of the panel majority and hold that the State did not meet its burden in proving that A.B. willfully abandoned A.F. per N.J.S.A. 9:6–8.21(c)(5).

IV.

The panel majority's judgment affirming the finding that A.B. abused or neglected A.F. under N.J.S.A. 9:6–8.21(c)(4)(a) is affirmed. The judgment affirming the finding that A.B. abandoned A.F. per N.J.S.A. 9:6–8.21(c)(5) is reversed.

CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ–VINA, and SOLOMON join in JUSTICE TIMPONE's opinion.