# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3139-16T1

NEW JERSEY DIVISION OF
CHILD PROTECTION AND
PERMANENCY,

     Plaintiff-Respondent,

v.

Y.G.,

     Defendant-Appellant,

and

H.D. and S.J.,

     Defendants.

_____

IN THE MATTER OF A.D. and P.J.,

     Minors.

_____

Submitted September 13, 2018 – Decided December 27, 2018

Before Judges Suter and Firko.

On appeal from Superior Court of New Jersey,
Chancery Division, Family Part, Hudson County,
Docket No. FN-09-0268-14.

Joseph E. Krakora, Public Defender, attorney for appellant (Jared I. Mancinelli, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jason W. Rockwell, Assistant Attorney General, of counsel; Sara M. Gregory, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Caitlin A. McLaughlin, Designated Counsel, on the brief).

PER CURIAM

Defendant Y.G. (Yolanda)[1] appeals the February 16, 2017 order terminating litigation in this Title Nine case and the underlying January 9, 2014 order that found she abused and neglected her children. She contends the Division of Child Protection and Permanency (DCPP) did not meet its burden of proving the children were at a substantial risk of harm from her failure to exercise appropriate care or supervision. We disagree with this argument because the record amply supports the Title Nine abuse and neglect order. We affirm.

Yolanda is the mother of two children: A.D. (Anna), born in 2008 and P.J. (Penny), born in 2012. In August 2013, Yolanda was hospitalized from a

---

[1] We use fictitious names throughout the opinion to protect the confidentiality of the participants and the children.

nervous breakdown. A social worker at the hospital helped Yolanda make arrangements for her children's care after she was admitted. DCPP received a referral from Hoboken Medical Hospital because Yolanda's cousin expressed concern about the ability to continue to care for Penny, who then was six months old, and had been entrusted to her care. The older child, Anna, was staying with a paternal aunt.

Yolanda met with DCPP's caseworker on August 20, 2013, after her discharge. Yolanda explained to her that she had gone to the emergency room a few days earlier after breaking up with her boyfriend, J.A. (John), who she had learned cheated on her. John is not the father of Anna or Penny. Yolanda and John's relationship involved domestic violence. Yolanda explained to the caseworker that she went to John's girlfriend's house to "confront him" because he cheated on her. She took the children with her because she did not have anyone to care for them. At his girlfriend's place, John and Yolanda argued to the point where they both physically struck each other; he also kicked and bit her in front of the children.

John lived with Yolanda and her children. Yolanda told the caseworker she knew he regularly used crack cocaine and had done so throughout the course of their relationship. She allowed him to care for the children despite

his drug use. Yolanda admitted that John stole the children's clothes and toys to sell them for his crack habit. He also sold Penny's nebulizer that she needed for her asthma medication. Yolanda purchased another one to replace it.

Yolanda's apartment was "very messy" according to the caseworker, who took photographs. Anna's bedroom was "completely cluttered" with "no space to walk into." Penny's crib had "lots of items in it," even though the caseworker told Yolanda just weeks earlier that for infant safety there should not be anything in the crib. The caseworker said the apartment was clean just two weeks earlier when DCPP closed an investigation about another referral. As a result of that investigation in May 2013, DCPP implemented a "safety protection plan in which [Yolanda] agreed to take her medication and continue to go into therapy and comply with all her services." The caseworker was concerned because Yolanda was no longer taking her medication.

DCPP removed the children from Yolanda's custody on an emergency basis in August 2013.[2] Two days later, the Family Part judge approved DCPP's continued custody, care and supervision of the children, finding after a hearing, that it would be contrary to their welfare to return them to Yolanda

---

[2] Referred to as a Dodd removal, it is authorized by the Dodd Act, N.J.S.A. 9:6-8.21 to -8.82 (as amended).

A-3139-16T1

because of her "untreated mental health issues and domestic violence concerns." Yolanda and the children's fathers were ordered to attend evaluations; they were granted liberal supervised visitation but no overnights. DCPP filed an order to show cause and verified complaint, seeking a finding of abuse and neglect under N.J.S.A. 9:6-8.21 and N.J.S.A. 30:4C-12 and custody of the children.

At the fact-finding hearing in January 2014, the caseworker testified that removal of the children was based on "[Yolanda's] mental health and her inability to make safe and appropriate choice[s] for . . . the children." She testified Yolanda was not taking her medication or following the May 2013 safety plan. She was not focused during the caseworker's interview; she "kept bringing the conversation back to the fact that [John] had cheated on her." She had allowed John to care for the children even though he used drugs. Anna was a special needs child and Penny, an infant. There was a history of domestic violence between Yolanda and John. Despite their history of domestic violence, Yolanda took the children with her to confront John. This showed an "inability to make safe decisions for her . . . children."

The Family Part judge found, based on the "totality of circumstances," that DCPP had proven abuse and neglect under Title Nine. Based largely on

Yolanda's statements to DCPP, the court found she knew John abused crack cocaine while residing with her and caring for the children and that he had stolen the children's clothing, toys and medicine to sell to support his drug use. Yolanda knew this but continued to allow him to reside with and care for the children. The court considered their history of domestic violence, particularly the incident where Yolanda took the children with her when she went to confront John. This was significant to the court because "the children were with her and they could have been at risk of physical harm."

Yolanda appeals the Title Nine order, arguing DCPP did not prove its case under N.J.S.A. 9:6-8.46, which requires, in relevant part, that "(1) any determination that the child is an abused or neglected child must be based on a preponderance of the evidence and (2) only competent, material and relevant evidence may be admitted." N.J.S.A. 9:6-8.46(b). There is no merit to this argument.

We note our general deference to Family Part judges' fact-finding because of their "special jurisdiction and expertise in family matters." Cesare v. Cesare, 154 N.J. 394, 413 (1998). See also N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 553 (2014). We will uphold fact-finding that is supported by sufficient, substantial and credible evidence in the record. See

N.J. Div. of Youth & Family Servs. v. L.L., 201 N.J. 210, 226 (2010); N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007). However, we will not hesitate to set aside a ruling that is "so wide of the mark that a mistake must have been made." M.M., 189 N.J. at 279 (quoting C.B. Snyder Realty, Inc. v. BMW of N. Am., Inc., 233 N.J. Super. 65, 69 (App. Div. 1989)). The court's interpretation of the law or its legal conclusions are reviewed de novo. See State in Interest of A.B., 219 N.J. 542, 554-55 (2014).

"Title [Nine] controls the adjudication of abuse and neglect cases." N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 343 (2010). N.J.S.A. 9:6-8.21, in pertinent part, defines an "[a]bused or neglected child" as:

> a child whose physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent . . . to exercise a minimum degree of care (a) in supplying the child with adequate food, clothing, shelter, education, medical or surgical care though financially able to do so or though offered financial or other reasonable means to do so, or (b) in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm or substantial risk thereof . . . or by any other acts of a similarly serious nature requiring the aid of the court.
>
> [N.J.S.A. 9:6-8.21(c)(4).]

Whether a parent has committed abuse or neglect "must be analyzed in light of the dangers and risks associated with the situation." N.J. Div. of Youth

7

& Family Servs. v. S.I., 437 N.J. Super. 142, 153 (App. Div. 2014) (quoting N.J. Dep't of Children & Families v. R.R., 436 N.J. Super. 53, 58 (App. Div. 2014)). "The 'paramount concern' of Title [Nine] is to ensure the 'safety of the children,' so that 'the lives of innocent children are immediately safeguarded from further injury and possible death.'" N.J. Div. of Child Prot. & Permanency v. A.B., 231 N.J. 354, 368 (2017) (quoting N.J.S.A. 9:6-8.8).

In order to prove abuse or neglect under N.J.S.A. 9:6-8.21(c)(4), DCPP must "establish by a preponderance of the evidence that: (1) the child's physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired; and (2) the impairment or imminent impairment results from the parent's failure to exercise a minimum degree of care." Id. at 369. "[A] guardian fails to exercise a minimum degree of care when he or she is aware of the dangers inherent in a situation and fails adequately to supervise the child or recklessly creates a risk of serious injury to that child." Ibid. (quoting G.S. v. Dep't of Human Servs., 157 N.J. 161, 181 (1999)). In making this evaluation, the court should "'account for the surrounding circumstances' . . . given that '[a]buse and neglect cases "are fact-sensitive."'" A.B., 231 N.J. at 369-70 (quoting Div. of Child Prot. & Permanency v. E.D.–O., 223 N.J. 166, 180 (2015)).

We agree with the Family Part judge that Yolanda was grossly negligent because she was aware of the imminent risks posing a danger to the children and did not make efforts to address them. She knew that John was using crack cocaine and stealing from the children to support his habit. He stole things that were important for the children's welfare such as their clothing and medicine. He took Penny's nebulizer that was to treat her asthma. Yolanda allowed him to reside in the apartment and care for the children. She did not take her prescribed medication.

"[W]e have said exposure alone [to domestic violence] cannot serve as a basis for a finding of abuse and neglect." N.J. Div. of Child Prot. & Permanency v. N.B., 452 N.J. Super. 513, 523 (App. Div. 2017). In N.J. Div. of Youth & Family Servs. v. S.S., 372 N.J. Super. 13, 26 (App. Div. 2004), we said that we would not assume "witnessing domestic abuse had a present or potential negative effect on the child sufficient to warrant a finding of abuse." Nonetheless, we agree with the Family Part judge that Yolanda's exposure of the children to domestic violence here placed them at risk of physical harm. At least one child was close enough to see her mother being kicked and bitten.

The record established that Yolanda failed to make decisions that would keep her children safe which placed them in imminent danger of harm. We are

satisfied the Family Part judge took into consideration all of the evidence in reaching the abuse and neglect finding under Title Nine. The cases are clear that "[c]ourts need not wait to act until a child is actually irreparably impaired by parental inattention or neglect." In re Guardianship of DMH, 161 N.J. 365, 383 (1999).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION