# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2276-19

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

      Plaintiff-Respondent,

v.

J.S.X.,

      Defendant-Appellant,

and

L.F.D.,

      Defendant.

_____

IN THE MATTER OF F.D.S.,
a minor.

_____

      Submitted May 4, 2021 – Decided May 19, 2021

      Before Judges Fisher and Moynihan.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FN-09-0214-19.

Joseph E. Krakora, Public Defender, attorney for appellant (John Salois, Designated Counsel, and Patricia Nichols, Assistant Deputy Public Defender, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Sookie Bae, Assistant Attorney General, of counsel; Nedda Alvarez, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Rachael E. Seidman, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

Defendant J.S.X. (Janet, a fictitious name[1]) came to the United States from Guatemala in 2011 to live with her paramour of many years, defendant J.D.R. (John), who arrived from Guatemala two years earlier. Janet's daughter F.D.S. (Francie), born in 2001, remained in Guatemala until she came to Bayonne in December 2015 to live with her mother and John, who she viewed as her stepfather.

---

[1] All names used for defendants and the child are fictitious to protect the child's privacy.

The matter in question had its genesis in a referral made by the Bayonne Police Department to the Division of Child Protection and Permanency on January 8, 2019. Due to concerns about Francie's absence from school, a truancy officer investigated and learned from Francie's friends that she had revealed to them she had been sexually abused by her stepfather. Division representatives went to defendants' home that night and spoke separately with Francie, Janet, and John. Francie did not then acknowledge there was anything untoward about her relationship with John. The next day, the Division was invited to the prosecutor's office to hear about new developments.

On January 9, a detective recorded interviews with both defendants as well as Francie. Janet told the detective that John told her the prior evening that he had sexually abused Francie in the past. Janet also advised that after this revelation, she, John, and Francie all went to bed; as was the existing arrangement, they all slept in the same room. Janet also told the detective that she went to work the next morning, leaving Francie and John asleep in the same room, knowing Francie would also be home the entire day because she had been suspended from school.

During her January 9 interview, Francie told the detective she did not trust her mother to protect her because she had told her mother eighteen months

3

earlier that John had kissed her and touched her private parts against her wishes and her mother did nothing about it; instead, according to Francie, Janet got upset and said she would send Francie back to Guatemala.[2] Around the same time, Francie began using sharp objects to cut her arms, finding this helped alleviate her anger and depression. She also described how John was upset with her the morning of January 8 because he had previously found her at home on the couch kissing her boyfriend. According to Francie, on the morning of January 8 John pushed her onto a bed but she was able to fend off his attempts to penetrate her. This circumstance made John angry, and he told Francie that because she now had a boyfriend she had "to behave like a woman with" him.

During his interview, John initially denied these claims. He told the detective that Francie said he sexually abused her because of the incident with Francie's boyfriend. Later in the interview, however, John admitted he started sexually abusing Francie about a year earlier and that he forcibly penetrated her on the morning of January 8, among other things.

---

[2] Francie also reported to her mother that she had been molested by an older boy in Guatemala a few years earlier but her mother, who was then in the United States, took no action.

A-2276-19

Both John and Janet were arrested. He was charged with sexual assault, criminal sexual contact, and endangering the welfare of a child. Janet was charged with endangering the welfare of a child.

On January 11, 2019, the Division filed this Title Nine action, alleging abuse or neglect and seeking custody of Francie. A fact-finding hearing occurred on June 5 and 25, 2019, during which the judge heard the Division's twelve witnesses. Neither John nor Janet testified, nor did they call any witnesses.

On June 27, 2019, the trial judge entered an order declaring that both John and Janet abused or neglected Francie. The judge's order contains his written findings of fact and conclusions of law. The judge found that Janet neglected Francie "by failing to exercise the minimum degree of care when she was aware that [John] had sexually abused" Francie and that Janet "failed to take any steps to protect and adequately supervise her." The judge based this determination on his finding that John "confessed the incident of January 8, 2019" and his "past history of sexual molestation" to Janet the night of January 8, 2019, and that Janet "allowed [Francie] to continue residing in the apartment with [John], to sleep that night in the same bedroom with [John and Janet], and to leave [Francie] alone at home with [John] the following morning." He concluded that

5

allowing Francie "to continue residing in the home of her confessed sexual abuser, to continue to sleep in the same room as her sexual abuser, and to leave [Francie] alone with her confessed sexual abuser were acts of gross negligence that exposed [Francie] to risk of serious injury."

Janet appeals,[3] arguing in a single point that the judge's holding is not supported by the evidence presented at the hearing for two reasons:

> A. Janet Provided a Requisite Level of Care to Francie and her Conduct Did Not Rise to the Level of Gross Negligence as Required Under Title Nine to Support a Determination of Abuse and Neglect.

> B. There is no Evidence That Francie Was Harmed by Janet's Parenting.

We find insufficient merit in these arguments to warrant further discussion in a written opinion, R. 2:11-3(e)(1)(E), adding only the following few brief comments.

As relevant here, N.J.S.A. 9:6-8.21(c)(4) defines an abused or neglected child as one "whose physical, mental, or emotional condition has been impaired or is in imminent danger of being impaired as the result" of the parent's failure "to exercise a minimum degree of care . . . (b) in providing the child with proper supervision or guardianship, by unreasonably . . . allowing to be inflicted harm,

---

[3] John has not appealed.

or substantial risk thereof." The Supreme Court held in G.S. v. Dep't of Human Servs., 157 N.J. 161, 181 (1999), that a parent breaches this obligation by failing to adequately supervise a child or by recklessly creating a risk of serious injury to the child "when . . . aware of the dangers inherent in a situation." See also N.J. Div. of Child Prot. & Permanency v. A.B., 231 N.J. 354, 369 (2017). The matter does not turn, as Janet's second argument suggests, on proof of actual harm to the child. While it certainly encompasses a child actually harmed, the statute and the jurisprudence that has developed are broader and were designed to protect children from harm when exposed to an imminent danger or substantial risk of harm even if the child is not actually harmed.[4] N.J. Dep't of Child. & Fams. v. A.L., 213 N.J. 1, 22 (2013).

The facts supporting the Division's claim were well established. Janet knew on the evening of January 8 that John had sexually abused Francie, even as recently as that morning. Yet she did nothing to protect the child that night

---

[4] To be sure, there was evidence of the harm suffered by the child as a result of John's conduct. She not only had been sexually abused on multiple occasions but had also taken to cutting herself. We are cognizant, however, that the claim against Janet was narrowly tailored to her failure to adequately supervise or protect the child on January 8, after John admitted his past conduct, until late the following morning. The judge made no finding that the child was actually harmed by Janet's conduct during that short period of time, only that the child was exposed to imminent danger.

or the next morning. Instead, Janice allowed her daughter to remain in the same room overnight with her abuser and then, in the morning, left the child alone with her abuser. There can be no doubt that exposing the child to that imminent danger – even if nothing actually happened in the late night and early morning hours by the time John went to work – constitutes a violation of the obligations imposed on Janet by N.J.S.A. 9:6-8.21(b)(4).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION