# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4771-17T1

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

    Plaintiff-Respondent,

v.

M.A.S.,

    Defendant-Appellant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF M.T.E.
and M.L.E.,

    Minors.

_____

Argued May 16, 2019 – Decided June 4, 2019

Before Judges Simonelli, Whipple and Firko.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Mercer County, Docket No. FG-11-0008-18.

Laura Orriols, Designated Counsel, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Laura Orriols, on the briefs).

Christina Anne Duclos, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Christina Anne Duclos, on the brief).

Meredith Alexis Pollock, Deputy Public Defender, argued the cause for minor (Joseph E. Krakora, Public Defender, Law Guardian, attorney; Nancy P. Fratz, Assistant Deputy Public Defender, on the brief).

PER CURIAM

Defendant M.A.S., the biological mother of M.T.E. and M.L.E., born in October 2013 and August 2015, respectively, appeals from the June 1, 2018 judgment of guardianship, which terminated her parental rights to the children. Defendant contends the trial judge erred in finding that plaintiff Division of Child Protection and Permanency (Division) proved prongs three and four of N.J.S.A. 30:4C-15.1(a) by clear and convincing evidence, and in admitting the testimony of the Division's psychological expert. We reject these contentions and affirm.

We will not recite in detail the history of the Division's involvement with the family. Instead, we incorporate by reference the factual findings set forth in

Judge Wayne J. Forrest's comprehensive written opinion, dated June 1, 2018. We add the following comments.

Defendant stipulated to David Brandwein, Psy.D. testifying as an expert in the field of psychology and did not question his qualifications. Brandwein conducted a psychological evaluation of defendant, as well as bonding evaluations between defendant and the children, and between the resource parents and the children.

Brandwein testified that defendant has an IQ of sixty-three, which indicates she suffers from an intellectual disability, which is a life-long condition that could not be remediated through services. Brandwein opined that due to defendant's low level of intellectual functioning she could not independently parent her children and would not be able to do so in the foreseeable future.

Brandwein acknowledged that defendant had complied with the services the Division provided to her; however, she had not benefited from those services, as her hygiene and parenting skills were still of concern. Defendant's lack of insight and understanding of her deficits also limited her ability to change her behavior.

3

According to Brandwein, defendant did not understand why the Division removed children from her. Defendant averred that her cousins had made false allegations of neglect, and denied ever neglecting the children in terms of feeding and bathing them, or in the conditions of the home. Defendant also believed her lack of housing was the only reason she was not reunited with her children. She admitted she had no support system, but denied she needed help in caring for the children.

Brandwein opined that defendant's intellectual disability created significant problems with her general reasoning, insight, and judgment, and this negatively affected her ability to care for herself, let alone safely parent her children, or understand and meet the children's needs. Brandwein did not believe defendant would knowingly abuse her children. However, he opined that her condition created a risk of neglect through acts of omission that would endanger the children in terms of "[c]onsistent care for the children, consistent attention to their physical needs, consistent attention to their psychological needs, consistent attention to their educational needs, [and] consistent attention to their medical needs."

Furthermore, Brandwein believed the risk to the children if placed with defendant would be "persistent and quite high." He did not foresee a time when

4

defendant's abilities would improve to the point that she could safely parent the children on her own. She would require "[twenty-four/seven] one hundred percent around the clock supervision, which is not feasible with children this young for, basically, [fifteen] or [sixteen] years." Brandwein opined that defendant was unable to safely parent children of such young ages, who would be totally dependent upon her to meet their needs, and she would struggle to raise a child with special needs, which may be the case with M.T.E.

In terms of bonding, Brandwein observed that the children did not have a secure psychological bond with defendant and did not look to her to fulfill parental functions. Rather, their primary parental attachment was to their resource parents, who were capable of providing them with safe and stable nurturance. Brandwein opined that the children would not suffer enduring psychological harm if their relationship with defendant was severed, although M.T.E. might display a short-term grief reaction, which could be alleviated through her relationship with her resource parents. Brandwein further opined that both children, and particularly M.L.E., were likely to suffer significant and enduring harm if their relationship with their resource parents was severed.

Ultimately, Brandwein concluded the risk of harm that would arise from placing the children in defendant's care far outweighed the risk of harm in

severing their relationship with her. Moreover, Brandwein saw no benefit in delaying permanency for the children, because the risk of placing the children with defendant would not decrease over time, whereas the risk associated with removing them from their resource parents would become greater. Brandwein believed it was in the children's best interests to be adopted by their resource parents. However, he was adamant that the children could not be safely placed with defendant, regardless of the permanency plan. Brandwein's testimony was undisputed.

On appeal, defendant contends Judge Forrest erred in admitting and relying on Brandwein's testimony because Brandwein: (1) was unqualified to testify about individuals with intellectual disabilities; and (2) testified inaccurately that defendant demonstrated no improvement from the services she received.

Defendant stipulated to Brandwein testifying as an expert in the field of psychology and did not question his qualifications. Therefore, the doctrine of invited error prevents her from contesting his qualifications on appeal. N.J. Div. of Child Prot. & Permanency v. A.B., 231 N.J. 354, 367 (2017); N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 340-41 (2010).

In any event, defendant's contention lacks merit. Brandwein testified to his relevant experience, and his education and experience is set forth in his curriculum vitae. Moreover, both his testimony and his expert's report reflect his expertise and understanding of defendant's intellectual functioning and abilities as it pertains to her capacity to parent her children.

In addition, Brandwein testified that the records he reviewed, from June, July, and November 2016, reflected concerns about defendant's "ability to use the skills that she had learned." He further testified that these concerns were consistent with his findings as to defendant's intellectual deficits and her level of insight and functioning, which were based not only upon his review of the records, but also his psychological evaluation of defendant.

Defense counsel cross-examined Brandwein about the limited number of records he reviewed, and argued in summation that his review was inadequate. Thus, Judge Forrest understood the bases for Brandwein's opinions, as well as defendant's arguments on the matter.

In his written opinion, Judge Forrest implicitly rejected defendant's argument. The judge found Brandwein to be a credible witness "based on his thorough understanding of the facts of the case, his candid responses to questions posed to him and his educational training and lengthy experience as a

7

licensed psychologist."  Thus, the judge relied on Brandwein's testimony. However, the judge also relied on the testimony of a Division caseworker, as well as the judge's own review of the documentary record, to conclude that the Division had proven all four prongs of N.J.S.A. 30:4C-15.1(a) by clear and convincing evidence.  Accordingly, we find no error, let alone plain error, in the admission of Brandwein's testimony.  R. 2:10-2.

Defendant does not challenge Judge Forrest's findings on prongs one and two of N.J.S.A. 30:4C-15.1(a).  She contends the judge erred in finding the Division proved prongs three and four of N.J.S.A. 30:4C-15.1(a) by clear and convincing evidence.

Our Supreme Court has established the standard of review in parental termination cases:

> Our task as an appellate court is to determine whether the decision of the family court in terminating parental rights is supported by "'substantial and credible evidence' on the record."  We accord deference to factfindings of the family court because it has the superior ability to gauge the credibility of the witnesses who testify before it and because it possesses special expertise in matters related to the family. . . . We will not overturn a family court's factfindings unless they are so "wide of the mark" that our intervention is necessary to correct an injustice.  It is not our place to second-guess or substitute our judgment for that of the family court, provided that the record contains

substantial and credible evidence to support the decision to terminate parental rights.

[N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448-49 (2012) (citations omitted) (quoting N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007); N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008)).]

Applying this standard, we discern no reason to reverse.

Prong Three

Defendant argues Judge Forrest erred in finding the Division proved prong three by clear and convincing evidence because services the Division provided to her were not reasonable, as they were not tailored to her intellectual disability and needs. We disagree.

"The third prong requires an evaluation of whether [the Division] 'made reasonable efforts to provide services to help the parent' remedy the circumstances that led to removal of the children from the home." F.M., 211 N.J. at 452 (quoting N.J.S.A. 30:4C-15.1(a)(3)). The emphasis on the third prong

> is on the steps taken by [the Division] toward the goal of reunification. "The diligence of [the Division's] efforts on behalf of a parent is not measured by" whether those efforts were successful. "'Reasonable efforts' may include consultation with the parent, developing a plan for reunification, providing services essential to the realization of the reunification plan,

informing the family of the child's progress, and facilitating visitation." Experience tells us that even [the Division's] best efforts may not be sufficient to salvage a parental relationship.

[Ibid. (citations omitted) (quoting In re Guardianship of DMH, 161 N.J. 365, 393 (1999); M.M., 189 N.J. at 281).]

As part of the inquiry, "the court must consider the alternatives to termination of parental rights and whether the Division acted reasonably." N.J. Div. of Youth & Family Servs. v. A.G., 344 N.J. Super. 418, 434-35 (App. Div. 2001).

"The reasonableness of the Division's efforts depends on the facts in each case." Id. at 435. "Reasonable efforts depend on the facts and circumstances of each case." N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 557 (2014). "Services that may address one family's needs will not be helpful to another." DMH, 161 N.J. at 390. Therefore, "[w]hether particular services are necessary in order to comply with the diligent efforts requirement must . . . be decided with reference to the circumstances of the individual case before the court, including the parent's active participation in the reunification effort." Ibid.; see also N.J. Div. of Child Prot. & Permanency v. T.D., 454 N.J. Super. 353, 382-83 (App. Div. 2018) (finding the Division failed to provide reasonable services that accounted for the defendant's mobility issues, where she suffered from multiple sclerosis and used a wheelchair); A.G., 344 N.J. Super. at 442

10

("The Division's efforts in providing classes and parenting programs must by their very nature take into consideration the abilities and mental conditions of the parents.").

Nevertheless, "[t]he diligence of [the Division's] efforts on behalf of a parent is not measured by their success. Thus, the parent's failure to become a caretaker for his [or her] children is not determinative of the sufficiency of [the Division's] efforts at family reunification." DMH, 161 N.J. at 393. Rather, the Division's "efforts must be assessed against the standard of adequacy in light of all the circumstances of a given case." Ibid. Moreover, even if the services offered were deficient, reversal of a termination order is not necessarily warranted. The best interests of the children controls. N.J. Div. of Youth & Family Servs. v. L.J.D., 428 N.J. Super. 451, 488 (App. Div. 2012).

Citing the documentary record, Judge Forrest found "the Division has made numerous and continuous efforts to provide services to [defendant] in order to reunify her with her children," including "weekly supervised visitation . . . psychological and bonding evaluations, parental capacity evaluations, substance abuse evaluations, urine screens, life skills training, parenting classes, individual counseling, assistance with SSI and housing assistance and referrals." The judge also noted the Division regularly held family team meetings and

visited the children in their resource home, provided the children with necessary early intervention and medical services, provided transportation assistance to defendant, and considered the potential caregivers suggested by defendant.

Judge Forrest acknowledged defendant complied with most of the services the Division offered her. However, citing Brandwein's testimony, the judge concluded that due to defendant's intellectual disability "she is incapable of retaining and utilizing the techniques she learns from the services the Division offered her[,]" and "she could never be able to independently raise young children such as [her children]," even if services were continued. The judge concluded:

> Such circumstances are apparently not [defendant's] fault and it is unfortunate that a parent apparently so willing to take care of her children is intellectually unable to do so appropriately and safely. However, the right of [defendant] to independently care for [her children] must be weighed against the right of the children to have permanency with secure and stable caregivers who are well-equipped to ensure the children's health, safety, welfare and education.

Consistent with Judge Forrest's findings and conclusions, and contrary to defendant's arguments on appeal, the record reflects that the Division provided defendant with services geared to her specific needs, including parenting skills training, life skills training, and discussions about and referrals to the

Department of Developmental Disabilities (DDD) and the Board of Social Services (BOSS), in order for her to access assistance with finances, medical insurance, and housing. The Division is not at fault for defendant's failure to benefit from the services she completed, or her refusal to fully cooperate with the DDD and BOSS. Moreover, the Division was under no obligation to provide defendant with full-time supervision to assist in caring for the children, which Brandwein testified was the only service that would permit safe reunification. See In re Guardianship of D.N., 190 N.J. Super. 648, 654 (J. & D.R. Ct. 1983) (considering termination of parental rights where both parents suffered from intellectual disabilities).

Defendant relies upon T.D., 454 N.J. Super. at 383, in which we faulted the Division for relying solely upon its expert's opinion that the defendant could not parent independently because she suffered from multiple sclerosis. We stated the Division should have obtained the defendant's medical records, as it had been ordered to do, in order to determine the full extent of her physical limitations and what supports or services she might need to parent successfully. Ibid.

However, this case is distinguishable from T.D. Here, defendant suffers from an intellectual disability that severely limits her ability to safely and

appropriately parent her children. The scope of defendant's disability was set forth in her original parenting capacity evaluation, in which specific services were recommended, as well as in Brandwein's report and testimony. There was no indication here that more testing or analysis, or a review of medical records was necessary. Moreover, unlike in T.D., the Division provided services directly relevant to addressing defendant's parenting deficits. However, her disability prevented her from benefiting from those services.

It is irrelevant that defendant is morally blameless for the disability that renders her unable to independently parent her young children. See A.G., 344 N.J. Super. at 438; In re Guardianship of R., 155 N.J. Super. 186, 194-95 (App. Div. 1977). The court's focus must be on determining the best interests of the children. A.G., 344 N.J. Super. at 442. Judge Forrest did so here. The record supports his factual findings and conclusions that the Division established prong three by clear and convincing evidence.

## Prong Four

Prong four of N.J.S.A. 30:4C-15.1(a) requires the Division to show by clear and convincing evidence that "[t]ermination of parental rights will not do more harm than good." The fourth prong serves as a "'fail-safe' inquiry guarding against an inappropriate or premature termination of parental rights." F.M., 211

N.J. at 453. "The question ultimately is not whether a biological mother or father is a worthy parent, but whether a child's interest will best be served by completely terminating the child's relationship with that parent." E.P., 196 N.J. at 108. The court must determine "whether . . . the child will suffer a greater harm from the termination of ties with [his or] her natural parents than from the permanent disruption of [his or] her relationship with [his or] her foster parents." In re Guardianship of K.H.O., 161 N.J. 337, 355 (1999).

Because harm to the child stemming from termination of parental rights is inevitable, "the fourth prong of the best interests standard cannot require a showing that no harm will befall the child as a result of the severing of biological ties." Ibid. Rather, the court's inquiry is one of comparative harm, for which the court must consider expert evaluations of the strength of the child's relationship to the biological parents and the foster parents. Ibid. Thus, "[t]o satisfy the fourth prong, the [Division] should offer testimony of a well qualified expert who has had full opportunity to make a comprehensive, objective, and informed evaluation of the child's relationship with both the natural parents and the foster parents." F.M., 211 N.J. at 453 (quoting M.M., 189 N.J. at 281). "Under this prong, an important consideration is '[a] child's need for permanency.' Ultimately, a child has a right to live in a stable, nurturing

environment and to have the psychological security that his most deeply formed attachments will not be shattered." Ibid. (alteration in original) (quoting M.M., 189 N.J. at 281).

Judge Forrest found there was "no realistic likelihood that [defendant] will be able to safely and appropriately care for her children now or in the foreseeable future," because she

> continues to suffer from an irreversible intellectual disability that limits her ability to apply learned parenting skills and care for her children independently, lacks stable housing and employment, is incapable of understanding how to appropriately discipline her children or how to address basic hygienic needs and does not comprehend the severity of the issues that led to her children's removal after they have been out of her custody for over two years.

Judge Forrest relied upon Brandwein's testimony regarding his psychological evaluation of defendant, and Brandwein's opinion that defendant would never be in a position to safely and adequately parent her children. The judge also relied upon Brandwein's testimony regarding the bonding evaluations and the children's need for permanency. The judge concluded that termination of defendant's parental rights would not do more harm than good, as termination would provide the children with the permanency and stability they require, because they will be made legally free for adoption by their resource parents.

16

The record supports Judge Forrest's factual findings and conclusion that the Division established prong four by clear and convincing evidence. The record evidences no realistic possibility that defendant will ever be able to safely and appropriately parent her children, and certainly not in time to meet their permanency needs. Moreover, Brandwein testified, without contradiction, that the children would not suffer enduring harm should their relationship with defendant be severed, but were likely to suffer significant and enduring harm should their relationship with their resource parents be severed. See N.J. Div. of Youth & Family Servs. v. B.G.S., 291 N.J. Super. 582, 592 (App. Div. 1996).

We are satisfied that Judge Forrest's opinion tracks the statutory requirements of N.J.S.A. 30:4C-15.1(a), accords with applicable case law, and is amply supported by the record.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION