# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4772-18T4

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

J.H.,

     Defendant-Appellant,

and

S.M., M.W. AND J.M.,

     Defendants.

_____

IN THE MATTER OF J.W.,
B.M., MAL.W., M.W., III, and
MAK.W., minors.

_____

     Argued November 5, 2020 – Decided December 7, 2020

     Before Judges Ostrer, Accurso and Enright.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FN-09-0223-18.

Robert H. McGuigan, Designated Counsel, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Robyn A. Veasey, Deputy Public Defender, of counsel; Robert H. McGuigan, on the briefs).

Amanda D. Barba, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Sookie Bae, Assistant Attorney General, of counsel; Amanda D. Barba, on the brief).

Rachel E. Seidman, Assistant Deputy Public Defender, argued the cause for minors (Joseph E. Krakora, Public Defender, Law Guardian, attorney; Meredith Alexis Pollock, Deputy Public Defender, of counsel; Rachel E. Seidman, of counsel and on the brief).

PER CURIAM

Defendant J.H.[1] (Janice) appeals from a May 11, 2018 order finding she abused and neglected J.W. (Jerilyn) by failing to protect her from excessive corporal punishment inflicted by Jerilyn's father, defendant M.W. (Mel). We affirm, substantially for the reasons set forth in Judge Anthony V. D'Elia's thoughtful oral decision.

---

[1] We use initials and pseudonyms to refer to the parties to protect their privacy and preserve the confidentiality of these proceedings. R. 1:38-3(d)(12).

2

A-4772-18T4

Janice is Mel's paramour.  She and Mel have three children together, namely Mal.W. (Mark), M.W. III (Mel, III) and Mak.W. (Mike).  Janice also has a daughter, B.M. (Bonnie) from a prior relationship with J.M. (Jim).  Jerilyn was born in 2003 to Mel and S.M. (Sue).  Janice is the only defendant involved in this appeal.

Prior to the instant litigation, Janice and Mel dated on and off for seven years.  Mel and Jerilyn moved to Janice's apartment approximately one week before plaintiff New Jersey Division of Child Protection and Permanency (Division) received a referral about Jerilyn.  Specifically, on January 8, 2018, Jerilyn's school nurse contacted the Division and informed the Division that Jerilyn had marks on her arms consistent with being hit with a belt or an extension cord.  That evening, Division workers went to the address provided in the referral, but no one was home.

The following day, a Division caseworker went to Jerilyn's school and interviewed her.  When the caseworker questioned Jerilyn about the marks on her body, Jerilyn admitted that on January 5, 2018, Mel hit her with an electrical cord on her arms, legs, and back.  The teenager further confirmed the site of some of her injuries still bled.

3

Jerilyn explained the beating occurred after she told Mel she allowed her girlfriend to visit Janice's apartment to retrieve a cellphone. Mel deemed this visit to be a violation of the "house rule" that no guests were permitted inside the home without adult supervision. He decided to "discipline" Jerilyn by hitting her with an extension cord multiple times on her arms, legs, and back. She tried unsuccessfully to defend herself.

According to Jerilyn, Janice and Bonnie were in the kitchen, adjacent to the area where the beating occurred, but Janice made no attempt to stop Mel. Jerilyn told the caseworker Mel previously used a belt to discipline her and hit her with a belt buckle once, injuring her right finger. Jerilyn stated, "I'm not afraid of my father, I'm used to getting disciplined by my father this way when I do something wrong. I never thought that this time it was going to be this bad, but I'm ok now."

Jerilyn advised the caseworker that the day after the incident, Mel tried to treat her wounds by rubbing alcohol on them. He stopped when Jerilyn yelled the alcohol burned her. Neither Mel nor Janice took further action to treat Jerilyn's injuries or obtain medical treatment for her.

The caseworker observed Jerilyn had "six bruises on her right arm, seven on her left arm, five on her back, two on her left leg and two on her right leg, all

4

in different stages of healing." Additionally, the caseworker noted Jerilyn wore a bandage on her right upper arm.

The Division contacted the Hudson County Prosecutor's Office, Special Victim's Unit (SVU). During a videotaped interview with a detective, Jerilyn provided statements consistent with her disclosures to the Division caseworker. When asked by the detective whether anyone saw Mel beat her with an extension cord, Jerilyn responded that only her dad and Janice witnessed the incident, but Janice did not intervene. Jerilyn stated, "it got to the point where I'm hurting, and sometimes, like when my dad beats me too much [Janice] will jump in and say, okay that's enough. But this time she didn't say anything. She was just sitting there staring."

The detective also interviewed Mel, who confessed he hit Jerilyn with an extension cord and inflicted bodily injury. He stated he took this action to discipline his daughter because she was "out of control." Mel further admitted he previously hit Jerilyn with a belt, but claimed he never left a mark or bruise.

When Bonnie was interviewed by the SVU, she denied being hit by Mel or Janice. However, she admitted that during the incident, she was in the kitchen with Janice and heard Jerilyn yelling at Mel to stop hitting her. She knew Jerilyn was beaten because she heard Jerilyn screaming and crying. Bonnie added,

"Jerilyn normally does not start crying." Bonnie also remarked that after the incident, Mel left for work and Jerilyn showed her a mark on her arm. Jerilyn told Bonnie her father caused this mark.

Defendants' three younger children were not interviewed, due to their age. However, the Division caseworker confirmed she did not observe any visible marks or bruises on these children.

Mel was arrested for aggravated assault, N.J.S.A. 2C:12-1(b)(1) and endangering the welfare of a child, N.J.S.A. 2C:24-4(a). Janice declined to be interviewed but she, too, was arrested for endangering the welfare of a child, due to her failure to assist Jerilyn during the incident or subsequently inform the authorities about what occurred. The Division executed a Dodd[2] removal for defendants' five children.

Following the Dodd removal, the Division took Jerilyn and her half-siblings to a local emergency room for pre-placement physicals. The emergency room pediatrician, Dr. Nileshwai Patel, observed Jerilyn suffered from moderate swelling and multiple abrasions on her arms, legs, and back. He found some of her abrasions were surrounded by bruises and hyper-fragmented lesions.

---

[2] A "Dodd" removal refers to the emergency removal of a child from a home without a court order, pursuant to The Dodd Act. N.J.S.A. 9:6-8.21 to -8.82.

A-4772-18T4

Moreover, Dr. Patel noted Jerilyn complained of pain when she moved her arm. He prescribed Bacitracin for her wounds and Motrin for her pain.

On January 12, 2018, Janice agreed to be interviewed by a Division caseworker. During her discussion with the caseworker, Janice denied Mel lived with her. Additionally, Janice told the caseworker she was a victim of domestic violence, and had filed for a restraining order, but withdrew her request for restraints when she learned Mel would be notified of her application. Janice asked the caseworker not to reveal this disclosure to Mel. Janice denied her children witnessed her being abused, but then equivocated, stating the "'the little ones' may have seen him choking her."

Janice also denied seeing Mel beat Jerilyn on January 5, 2018, but admitted she heard Jerilyn screaming during the incident. Janice maintained she did not see any marks or bruises on Jerilyn after the beating. Further, she told the caseworker Jerilyn acted "regular" and they were "laughing and joking" throughout the following weekend.

On May 11, 2018, Judge D'Elia conducted a fact-finding hearing. At the outset of the trial, Mel's counsel objected to the introduction of the Division's case report on Janice, wherein she indicated she was a victim of domestic violence. Janice's counsel acquiesced to the exclusion of this evidence.

The two caseworkers assigned to this matter, Francisco Monterrosa and Schryka Massey, testified on behalf of the Division about their investigation of the incident. The Division also produced the SVU videotaped interviews of Janice, Mel and Jerilyn, and photos showing Jerilyn's marks and bruises days after the incident. Moreover, the judge admitted Jerilyn's medical records, the Division's records regarding the January 8, 2018 referral, and an investigation summary from a 2016 referral regarding Mel purportedly hitting Jerilyn with a belt and a closed fist. Neither Mel nor Janice testified nor presented witnesses in their defense.

During the closing remarks of Janice's counsel, she stated, in part:

> Now, in this particular instance there was no way for [Janice] to know the difference that something more severe was happening this time versus any other time that [Mel] would have disciplined the child. And Jerilyn did not follow up in any way with [Janice]. She didn't come to her and say, I am injured, I am in pain, I am hurt. She spent the entire weekend with [Janice]. And it wasn't until she was -- well, whether she was at the hospital, whether she was at the school, but certainly it wasn't until Monday that she said anything about being in pain.
>
> . . . .
>
> Which is just not something not strong enough to really say that [Janice] had frankly done anything wrong . . . . She was not responsible for this. She was not the person who was involved in the disciplining. And the

child didn't report it to [Janice], who . . . was the adult in the home immediately after it happened, or certainly within the three days after it happened.

At the conclusion of the trial, Judge D'Elia found the Division proved by a preponderance of evidence that pursuant to N.J.S.A. 9:6-8.21(c), Mel abused Jerilyn when he "used excessive corporal punishment . . . by hitting [Jerilyn] several times with an electrical cord on her arms, back [and] leg, leaving marks [and] bruising." In his oral decision, the judge concluded "[t]his was a whipping with an electrical cord that went on for a good period of time, that caused bad, bad bruises, that caused [Jerilyn] to scream and to cry and to yell[.]" Additionally, Judge D'Elia credited Jerilyn's statements, concluding everything she "told the investigator was true. She seemed relaxed, she seemed open. She explained freely why she never really told anybody about the prior incidents, because she didn't want it to be blown up bigger than it was. And she didn't want anybody to get in trouble."

Regarding Janice, the judge stated:

> She's in the kitchen, she heard everything, she knew what was going on. She knew how bad it was. She could hear the screams. This was not just one whip, or even two whips. This was multiples. So, it was going on for a while.
>
> . . . .

9

I do find that she's the paramour of the parent, so she does have a responsibility to step in under the law . . . . [T]he State legislature . . . wants girlfriends and boyfriends of parents, who otherwise care for minors when they're around, to get involved, or they could be charged with abuse and neglect. Why? Because the overriding concern of the law is not to protect the relationship with the girlfriend or boyfriend with the parent, but to make sure that the kid is best protected . . . . I believe [Jerilyn] that [Janice's] done it in the past. That she stopped [Jerilyn] from getting beat by the father when he thought that he was applying the proper punishment. But, this time she dropped the ball. I'm finding that she did commit abuse and neglect by not getting involved in light of the severe injuries that occurred, the extensive whipping that was ongoing right . . . in the next room. And that for that reason I'm finding that the Division has proven its case against her by a preponderance of the evidence as well.

Judge D'Elia's May 11, 2018 fact-finding order reflected that pursuant to N.J.S.A. 9:6-8.21(c), Janice's "failure to intervene constituted gross negligence [and] a failure to exercise a minimum degree of care to prevent the child from suffering significant injuries physically [and] emotionally as a result of the excessive corporal punishment."

On appeal, Janice argues this order should be vacated because it was not based on adequate and substantial evidence in the record. In support of this contention, she argues she is a victim of domestic violence, and "would likely have been in the grip of fear" during the incident and that "the entire

10

psychological dynamic likely effectively inhibited her from acting, at least temporarily." (Emphasis added).

The pertinent legal standards under Title Nine are well established. An abused or neglected child under Title Nine is one whose

> physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent or guardian, as herein defined, to exercise a minimum degree of care . . . in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof, including the infliction of excessive corporal punishment; or by any other acts of a similarly serious nature requiring the aid of the court.
>
> [N.J.S.A. 9:6-8.21(c)(4).]

The Supreme Court established that the phrase "minimum degree of care" under the statute "refers to conduct that is grossly or wantonly negligent, but not necessarily intentional." G.S. v. Dep't of Human Servs., 157 N.J. 161, 178 (1999). A parent or guardian falls short of the "minimum degree of care" standard "when he or she is aware of the dangers inherent in a situation and fails adequately to supervise the child or recklessly creates a risk of serious injury to that child." N.J. Div. of Child Prot. & Permanency v. A.B., 231 N.J. 354, 369 (2017) (quoting G.S., 157 N.J. at 181).

N.J.S.A. 9:6-8.21(a) defines a parent or guardian as "any natural parent, . . . paramour of a parent, or any person, who has assumed responsibility for the care, custody, or control of a child or upon whom there is a legal duty for such care."

Whether a parent, guardian, or a paramour of a parent has engaged in acts of abuse or neglect involves a totality of the circumstances analysis. N.J. Div. of Youth & Family Servs. v. V.T., 423 N.J. Super. 320, 329 (App. Div. 2011). Specifically, "the focus is on the harm to the child and whether that harm should have been prevented had the guardian performed some act to remedy the situation or remove the danger." N.J. Div. of Child Prot. & Permanency v. J.L.G., 450 N.J. Super. 113, 121 (2015).

Our scope of review of a Family Part judge's fact-finding determination of abuse or neglect is limited. We must defer to the factual findings of the Family Part if they are sustained by "adequate, substantial, and credible evidence" in the record. N.J. Div. of Child Prot. & Permanency v. N.B., 452 N.J. Super. 513, 521 (App. Div. 2017) (citation omitted). That deference is justified because of the Family Part's "special jurisdiction and expertise in family matters." N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 343 (2010) (citation omitted). The reviewing court grants particular deference

to the trial court's credibility determinations, and only overturns its determinations regarding the underlying facts and their implications when the "findings went so wide of the mark that a mistake must have been made." N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (internal quotation omitted). That said, an appellate court does not give special deference to the trial court's interpretation of the law, which it reviews de novo. D.W. v. R.W., 212 N.J. 232, 245-46 (2012).

Applying these well-settled principles, we are satisfied Judge D'Elia did not abuse his discretion in finding Janice was grossly negligent by failing to protect Jerilyn from the excessive corporal punishment Mel inflicted on Jerilyn on January 5, 2018. Indeed, Janice does not deny she did not assist Jerilyn during the "extensive whipping" incident, even though she was present in an adjacent room. Moreover, she does not dispute she intervened on Jerilyn's behalf on prior occasions when she believed Mel's corporal punishment had become excessive.

Although there is some evidence in the record to support Janice's claim that she also was a victim of Mel's domestic violence, it is insufficient to allow us to consider whether Janice's fear of Mel impeded her from intervening when he beat Jerilyn with an electrical cord or coming to the child's aid afterward, and

13

from testifying to her fears at the fact-finding hearing. If Janice believes she could marshal sufficient evidence to demonstrate she failed to act because she was under duress, her remedy is through a motion for relief from the judgment under Rule 4:50-1. We express no opinion about the likelihood of success of such an application.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4772-18T4