# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3769-23

NEW JERSEY DIVISION OF
CHILD PROTECTION AND
PERMANENCY,

     Plaintiff-Respondent,

v.

R.A.F.,

     Defendant,

and

B.H.,

     Defendant-Appellant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF R.M.H.,
a minor.

_____

Submitted March 31, 2025 – Decided April 10, 2025

Before Judges Berdote Byrne and Jablonski.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FG-04-0050-24.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Catherine Wilkes, Assistant Deputy Public Defender, of counsel and on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent (Janet Greenberg Cohen, Assistant Attorney General, of counsel; Wesley Hanna, Deputy Attorney General, on the brief).

Jennifer N. Sellitti, Public Defender, Law Guardian, attorney for minor (Meredith A. Pollock, Deputy Public Defender, of counsel; Steph Kozic, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

Defendant, B.H. ("Boris"), appeals from a Family Part order terminating his parental rights to his daughter R.M.H. ("Rosie").[1] He argues only that the Division of Child Protection and Permanency failed to prove, by clear and convincing evidence, that termination would not do more harm than good under N.J.S.A. 30:4C-15.1(a)(4). After reviewing the record and considering the applicable legal standards, we affirm substantially for the reasons stated by

---

[1] We use initials and pseudonyms to identify the parties, the children, and others to protect their privacy, and because records relating to the Division's proceedings under Rule 5:12 are excluded from public access under Rule 1:38-3(d)(12).

2

A-3769-23

Judge Francine I. Axelrad in her thorough and well-reasoned oral opinion. We add the following additional comments.

I.

The pertinent evidence is set forth in Judge Axelrad's opinion and need not be repeated in detail here. Instead, we incorporate the judge's findings and conclusions by reference and summarize only the facts pertinent to the issue on appeal.

Rosie was born substance-exposed and spent the first month of her life detoxifying in a neonatal intensive care unit. Later, she was diagnosed with autism spectrum disorder and then with a potentially life-threatening and rare genetic disorder that impedes her ability to process protein. After living with her parents for approximately two and one-half years during which time she medically failed to thrive, the Division removed her from Boris' and, her mother's, R.A.F. ("Robin"),[2] care. Both parents had failed to maintain their sobriety, to follow the care and safety plan the Division had created for Rosie, and to comply with the Division's treatment and therapeutic recommendations. At the time of trial, Rosie had been in a preadoptive home for ten months.

_____

[2] Robin's parental rights were also terminated but she has not appealed.

A-3769-23

Throughout the Division's involvement with his family, Boris routinely tested positive for illegal substances and failed to participate in the panoply of rehabilitative services that the Division offered including forensic psychological and substance abuse evaluations, family team meetings to facilitate reunification with Rosie, parenting skills referrals, and transportation assistance. Additionally, he frequently missed parenting time sessions and failed to appear for the bonding evaluation that the Division scheduled.

In his report, the Division's expert psychologist recognized that although Rosie might recall her biological parents' identity, she was likely not psychologically bonded to them because of their consistent lack of contact with her. The Division's expert testified that Rosie was securely bonded with her resource parents and that her considerable medical needs were being met by them. The expert concluded that "even if severing [Rosie's] ties to her parents would bring some risk of emotional harm, [Rosie] has a good prognosis for long-term emotional health if she is able to remain under the care or custody" of her resource parents and that they would be able to mitigate any harm. Noting that the resource parents will serve as an "emotional buffer against whatever stressors or traumatic life experiences [Rosie] endures," Rosie's resource parents "have been and will continue to mitigate [Rosie's] risk for emotional harm over

4

time."  Rosie's Law Guardian supported the Division's plan of termination of Boris' parental rights.

Based on the trial testimony and exhibits, Judge Axelrad found the Division provided clear and convincing evidence to support the four prongs of the "best interests of the child" standard set forth in N.J.S.A. 30:4C-15.1(a) to terminate Boris' parental rights.

## II.

A trial court's decision to terminate parental rights is subject to our limited review.  N.J. Div. of Youth & Fam. Servs. v. G.L., 191 N.J. 596, 605 (2007).  A family court has "broad discretion because of its specialized knowledge and experience in matters involving parental relationships and the best interest of children."  N.J. Div. of Child Prot. & Permanency v. A.B., 231 N.J. 354, 365 (2017) (quoting N.J. Div. of Youth & Fam. Servs. v. F.M., 211 N.J. 420, 448-49 (2012)).  When a family court relies upon evidence produced at a hearing, we "defer to the factual findings . . . because [the trial court] has the opportunity to make first-hand credibility judgments about the witnesses who appear on the stand; it has a 'feel of the case' that can never be realized by a review of the cold record."  N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008) (quoting N.J. Div. of Youth & Fam. Servs. v. M.M., 189 N.J. 261, 293 (2007)).

5

We defer to the factual findings of family courts "unless they are so 'wide of the mark' that our intervention is necessary to correct an injustice." F.M., 211 N.J. at 427 (quoting E.P., 196 N.J. at 104). Therefore, the family court's decision to terminate parental rights will not be disturbed "when there is substantial credible evidence in the record to support the court's findings." E.P., 196 N.J. at 104.

On appeal, defendant does not challenge Judge Axelrad's findings as they apply to prongs one, two, or three of the best interests test. His appeal focuses only on prong four and argues the Division failed to produce clear and convincing evidence that termination of his parental rights would not do more harm than good. According to "prong four" of the best interests test, N.J.S.A. 30:4C-15.1(a)(4), he argues that the Division's proofs were insufficient because the Division's expert failed to conduct a "comprehensive, objective and informed evaluation" of the "entirety of the caregiver relationship with the child." We disagree.

The fourth prong of the best interests test "serves as a fail-safe against termination even where the remaining standards have been met." E.P., 196 N.J. at 108 (quoting G.L., 191 N.J. at 609). "The question ultimately is not whether a biological mother or father is a worthy parent, but whether a child's interest will best be served completely terminating the child's relationship with that

parent." Ibid. "[A] child's need for permanency is an extremely important consideration pursuant to this prong." N.J. Div. of Youth & Fam. Servs. v. R.G., 217 N.J. 527, 559 (2014). "[A] child has a right to live in a stable, nurturing environment and to have the psychological security that [her] most deeply formed attachments will not be shattered." F.M., 211 N.J. at 453. But "[k]eeping the child in limbo, hoping for some long[-]term unification plan, would be a misapplication of the law." N.J. Div. of Youth & Fam. Servs. v. A.G., 344 N.J. Super. 418, 438 (App. Div. 2001).

The record supports the trial court's findings as to prong four. We agree with Judge Axelrad that despite years of Division involvement and multiple services specifically designed to assist Boris' reunification with Rosie, his inability to create a safe and stable home for Rosie persisted. Similarly, as the trial court found, there was abundant evidence Rosie would suffer further harm if the permanent placement were further delayed, Rosie's resource parents can mitigate any harm stemming from the termination, and she will not suffer greater harm from termination of Boris' parental rights.

We find Judge Axelrad's findings with respect to prong four are amply supported by substantial credible evidence. See F.M., 211 N.J. at 427.

Boris' remaining arguments are without sufficient merit to warrant discussion in a written opinion.  <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division