**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1831-22
A-1832-22

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

J.F. and S.S.,

     Defendants-Appellants/
     Cross-Respondents.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF P.S.-S.F.
and J.-A.S.F., minors,

     Cross-Appellants.[1]

_____

Submitted January 7, 2025 – Remanded February 11, 2025
Resubmitted June 3, 2025 – Decided August 5, 2025

Before Judges Sumners and Susswein.

---

[1] On June 9, 2025, cross-appellant made a motion to dismiss cross-appeal, which was granted by order of the court on June 16, 2025.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FG-04-0063-22.

Jennifer N. Sellitti, Public Defender, attorney for appellant/cross-respondent J.F. in A-1831-22 (Amy M. Williams, Designated Counsel, on the briefs).

Jennifer N. Sellitti, Public Defender, attorney for appellant/cross-respondent S.S. in A-1832-22 (Daniel A. DiLella, Designated Counsel, on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent (Sookie Bae-Park, Assistant Attorney General, of counsel; Lori DeCarlo, Deputy Attorney General, on the briefs).

Jennifer N. Sellitti, Public Defender, Law Guardian, attorney for minors (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Damen J. Thiel, Designated Counsel, on the briefs).

PER CURIAM

This termination of parental rights case returns to us following the remand we ordered on February 11, 2025. We presume the parties are familiar with the pertinent facts and procedural history that are recounted in our prior opinion, New Jersey Div. of Child Prot. & Permanency v. J.F., No. A-1831-22, A-1832-

22 (N.J. Super. Ct. App. Div. Feb. 11, 2025),[2] and need only briefly summarize the post-trial circumstances that necessitated the remand.

Both parents, Jane and Sam,[3] appealed from a February 2, 2023 Family Part order terminating their parental rights to their children, Penny and Jerry. After the guardianship trial but while the appeal was pending, Jerry experienced behavioral challenges that required hospitalization. Following his discharge, Jerry was placed in a new resource parent's home, where he remains. Penny, however, continues to live with Sally, the initial resource parent.

On January 14, 2025, we requested supplemental submissions from the parties addressing Jerry's post-trial change in placement status. We affirmed the guardianship order in part but remanded the matter for the trial court to reconsider its parental termination order to account for the change of circumstances since trial. In doing so, we recognized that "the trial court is best situated to determine not only the impact of the new placement plan for Jerry, but also whether the court's own findings and legal conclusions would have been

_____

[2] In our prior opinion's case caption, permanency was inadvertently misspelled as "[p]ermanancy." We use the correct spelling for citation purposes here.

[3] We use the same pseudonyms that we used in our prior opinion. J.F., slip op. at 2 n 1. See also R. 1:38-3(d).

different had the change in resource placement for Jerry occurred before trial." Id. at 28.

Pursuant to our remand instructions, Judge Francine I. Axelrad (t/a, retired on recall) conducted a hearing on April 8 and 22, 2025. Adoption caseworker Marisol Figueroa testified about Jerry's post-trial change in placement, the siblings' ongoing contact with each other, and the positive changes in both children. She explained that for the first time in more than five years, Jerry was no longer receiving services, other than Attention-Deficient/Hyperactivity Disorder medication, and was "doing absolutely amazing." Figueroa attributed the positive change to the care provided by his new resource parents.

Figueroa also testified that in addition to the monthly sibling visits arranged by the Division of Child Protection and Permanency (the Division), Jerry's and Penny's resource parents developed a relationship and often arranged additional contact between the children. Jerry also continued a "close relationship" with Sally.

Figueroa testified that she discussed the differences between kinship legal guardianship (KLG) and adoption with Jerry's resource parents and provided them with a factsheet explaining the two plans. She testified that Jerry's resource

A-1831-22

parents understood the differences between KLG and adoption and that they were committed to adopting Jerry.

Neither Jane nor Sam cross-examined Figueroa about her discussion with the resource parents. Nor did either object to admission of the fact-sheet acknowledgment. Figueroa further testified that Penny and Jerry wanted to be adopted by their respective resource parents.

Melanie A. Freedman, Ph.D., testified regarding her post-trial bonding evaluations with Jerry and Penny, and with Jerry and his resource parents. Dr. Freedman described Jerry's "tremendous positive changes," which she attributed to the care he was receiving from his resource parents. Dr. Freedman opined that Jerry was "very much" attached to his resource parents, who confirmed that they wanted to adopt Jerry and supported ongoing sibling contact.

Dr. Freedman further testified that Jerry and Penny expressed a desire to be adopted by their respective resource parents and understood that would mean living apart from each other. She explained they exhibited a "very typical sibling relationship" and it was "clear" they were maintaining contact despite now living with different resource parents. Dr. Freedman testified she believed Jerry's resource parents would continue to allow sibling contact with Penny.

A-1831-22

Dr. Freedman opined that Jerry and Penny likely would not experience any harm from living separately. She noted the siblings had developed a stronger and more stable relationship. She added that they both gained an increased support network from each other's resource families. Dr. Freedman emphasized that Jerry was doing much better in his new resource home. She stated that in the unlikely event that sibling contact ceased, Jerry's and Penny's resource parents would be able to mitigate any harm the children would experience.

In sum, Dr. Freedman strongly supported the Division's goal of adoption for both children. She concluded that adoption by their respective resource parents would afford "the best chance to experience long-term emotional health, a strong identity, and a sense of permanency."

Jane and Sam offered no witnesses or evidence at the remand hearing.

Significantly, on remand, the children's positions have changed since the initial guardianship trial. They initially opposed termination of parental rights, but now support termination followed by adoptions with their respective caregivers.

I.

Jane raises the following contention for our consideration:

6

THIS COURT'S REMAND DIRECTIVE WAS NOT LIMITED TO THE FOURTH PRONG OF THE BEST INTEREST TEST, IT WAS ERROR FOR THE TRIAL COURT NOT TO CONSIDER THE IMPACT OF THE CHANGE IN PLACEMENT UNDER THE WHOLE OF THE BEST INTEREST TEST, AND PERMANENTLY, LEGALLY SEVERING THE SIBLING RELATIONSHIP BETWEEN PENNY AND JERRY IS NOT IN THEIR BEST INTERESTS WHEN A VIABLE ALTERNATIVE TO TERMINATION OF PARENTAL RIGHTS EXISTS FOR THESE CHILDREN WHO HAVE A LONG "SHARED HISTORY"

Sam also raises the following arguments for our consideration:

The Judgment Terminating [Sam]'s Parental Rights to his Children Should be Reversed. The Children's Separation is Harmful and the Children Will Be Losing their Middle Eastern Culture. The Resource Parents were not Adequately Informed or Examined About the Difference Between Kinship Legal Guardianship and Adoption.

Furthermore, both defendants contend the trial judge erred in limiting the scope of their cross examination of the State's witnesses.

## II.

We first address defendants' contentions the trial judge at the remand hearing unfairly limited the scope of cross examination. Specifically, when Jane's counsel attempted to cross-examine Dr. Freedman on a portion of the report she prepared <u>before</u> trial (i.e., not the report on Jerry's bonding prepared

for the remand proceeding), the State objected that this was beyond the scope of the remand hearing. The judge agreed, ruling:

> The [c]ourt will sustain the objection that the purpose of the remand is solely with respect to the relocation of [Jerry] vis-à-vis the sibling contact with [Penny], vis-à-vis his relationship with his new resource parents and that family's ability to provide for the structured environment, et cetera.
>
> This is not a rehash or testimony with respect to the [c]ourt's findings with respect to a termination of parental rights, vis-à-vis the parents' relationship with the children.

Later in the proceedings, Sam's counsel attempted to cross-examine Dr. Freedman about Penny and Jerry's older sibling. The trial judge sustained the State's objection, explaining "the absence of that relationship did exist at the time of the [guardianship] trial. That was not addressed by the Appellate Division in the [r]emand. That is not part of the remand."

We find no abuse of discretion in the trial judge's evidentiary rulings. The judge correctly applied the limited scope of the remand. As we emphasized in our remand instructions, "we remand for trial court to reconsider its parental termination order to solely account for the change of circumstances since trial." J.F., slip op at 28 (emphasis added).

A-1831-22

We turn next to the merits of the trial judge's findings of fact and conclusions of law. The judge accredited Dr. Freedman's and Figueroa's testimony, noting that the children have benefited from the change in circumstances since the court issued its initial guardianship decision. She further found that Jerry's resource parents understood the differences between KLG and adoption and were committed to adoption, which the Division and Dr. Freedman supported. As for Penny, she found that adoption by Sally continued to be in her best interests. The judge added there was "no reason to question the expectation of ongoing sibling contact."

The trial judge also found that the children were "stable, thriving, [had] strong attachments to their caregivers and each other, and are anxious for the permanency of adoption by their respective resource parents who meet all their needs, including maintaining a relationship with one another." Accordingly, the judge "reaffirm[ed] its decision that the Division had met its burden of proof by clear and convincing evidence as to all the statutory elements of N.J.S.A. 30:4C-15.1(a), and particularly with respect to the remand, the fourth prong that 'termination of parental rights will not do more harm than good.'" (Quoting N.J.S.A. 30:4C-15.1(a)(4)).

The scope of our review is narrow. As we noted in our prior opinion, the deference we accord to Family Part judges is based in part on their specialized expertise. See Div. of Child Prot. & Permanency v. B.P., 257 N.J. 361, 373-74 (2024) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)) (alteration in original) ("Because of the family courts' special jurisdiction and expertise in family matters, [we] should accord deference to family court factfinding."). Findings by a trial court "are binding on appeal when supported by adequate, substantial, credible evidence." T.M.S. v. W.C.P., 450 N.J. Super. 499, 502 (App. Div. 2017) (quoting Cesare, 154 N.J. at 411-12). Stated another way, we do not disturb a court's findings unless those findings are "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Cesare, 154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). However, we do not accord such deference to the trial court's legal conclusions, which we review de novo. N.J. Div. of Child Prot. & Permanency v. A.B., 231 N.J. 354, 369 (2017).

We reiterate and amplify the portion of our prior opinion and remand order that acknowledged, "the trial court is best situated to determine not only the impact of the new placement plan for Jerry, but also whether the court's own

findings and legal conclusions would have been different had the change in resource placement for Jerry occurred before trial." J.F., slip op. at 28. The trial judge's diligence on remand confirms the faith we put in it to account for the post-guardianship-trial developments.

In sum, we find no abuse of discretion to warrant further appellate intervention. On the contrary, we do not hesitate to embrace the cogent and well-supported findings of fact and conclusions of made by Judge Axelrad on remand. To the extent we have not specifically addressed them, any remaining arguments raised by defendants with respect to the remand proceedings lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Finally, we add that the accelerated schedule for completing the remand proceedings was motivated by our overarching concern for achieving permanency when applying the best interests of a child test. See N.J.S.A. 30:4C-15.1(a)(2). Our State has a "strong public policy in favor of permanency. In all our guardianship and adoption cases, the child's need for permanency and stability emerges as a central factor." In re Guardianship of K.H.O., 161 N.J. 337, 357 (1999) (first citing In re Guardianship of J.C., 129 N.J. 1, 26 (1992); and then citing New Jersey Div. of Youth & Family Servs. v. A.W., 103 N.J. 591, 610 (1986)). Our unwavering commitment to achieving permanency for

11

Penny and Jerry supports our conclusion to affirm the trial court's rulings, thus allowing Penny and Jerry's adoptions to proceed.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

A-1831-22